Masten, J.
Two questions of fact were ordered to be and were tried by a jury, who found upon them in favor of the plaintiff. The defendant moved for a new trial of •them by jury, which was denied, and an appeal was taken from the order denying a new trial. The further *368 trial of the action was proceeded with before the court; judgment for the plaintiff was ordered and entered, from which the defendant appealed.
Both appeals are now before us upon a case made by the defendant containing exceptions.
Having arrived at the conclusion that the order and the judgment must be affirmed, I will briefly state the grounds of that conclusion. The contract of Patchin to exchange stock for bonds, whether it was, in fact, as it is claimed to have been by the plaintiff, or whether it was, in fact, as it is claimed to have been by the defendant, was within the statute of frauds, and void.
Upon the merits, I think the case before us turns upon the solution of the question between whom, when the exchange was subsequently made in fact, was it made ?
If it was made between Patchin and the plaintiff and defendant, as the plaintiff claims it was, then the merits are with the plaintiff; if it was made by Patchin with the defendant solely on his own behalf, then possibly the merits are with the defendant.
In order to determine this question, the transaction must be examined from beginning to end. And parol evidence of the agreement under which it was made is admissible. When there is a delivery of all or part of the things sold, the contract of sale may be by parol, and may be established in the same manner as any other contract, not required to be in writing, may be.
The preponderance of evidence is, and the findings of fact are substantially in accordance with it, that on April 23, 1861, at this city, a verbal agreement for the exchange of stocks for bonds was made between Mr. Patchin, who was the owner of a large amount of the capital stock of the Buffalo, New York & Erie Railroad Co. of the one part, and the plaintiff and defendant, who severally owned a large amount of the first mortgage bonds of the said company, of the other part, by which said Patchin was to give to the plaintiff and defendant *369 one hundred and fifty thousand dollars of said stock, and the plaintiff and defendant were to give said Patchin fifteen thousand dollars of said bonds, with the interest coupons to the following June off.
The exchange was to be made, at a subsequent day, neither the certificates of said stock nor said bonds being present. The plaintiff was to contribute five thousand dollars of said bonds, and to have fifty thousand dollars of said stock, and the defendant was to contribute ten thousand dollars of said bonds, and have one hundred thousand dollars of said stock. The plaintiff resided at Batavia, and the defendant and Patchin at Buffalo; and it was agreed between the plaintiff and defendant that the defendant should, on the part of himself and the plaintiff, attend to the making of said exchange with the said Patchin, and should deliver to said Patchin the whole of said fifteen thousand dollars of bonds, and recéive from said Patchin said one hundred and fifty thousand dollars of stock under said contract of exchange, and that the plaintiff should replace the said five thousand dollars of bonds to be advanced by the defendant for him with like bonds.
Subsequently, and in pursuance of said contract of exchange, said Patchin and the defendant, on behalf of himself and the plaintiff made the exchange.
This being the case, I am unable to see that the statute of frauds has any application to the case in hand. As between vendor and vendee, no writing is necessary to transfer the title to bonds or stock. Delivery of the-bonds or of the certificate of stock, under a parol contract of sale, is sufficient to that end. .
Suppose that the verbal contract of exchange had been between Patchin and the plaintiff solely, and the-plaintiff had requested the defendant as his agent to-advance the bonds and complete the exchange, and the defendant had, in the name of the plaintiff and avowedly as his agent, made the exchange with Patchin, pursuant to the contract-, advancing his own bonds for that purpose, what application could the statute of *370 frauds have to the case ? It was not necessary that the agent’s appointment or authority should be in writing. Is there any doubt but that in such case the title would pass to the principal, and not to the agent, or that the agent could recover of the principal the adyances made at his request for him? There is none in my mind. Upon what principle could the agent claim that the title had ves'ed in him ? The owner of the stock could dispose of it to whom he pleased. Title to it must be made from him, and how could one make title to it from the owner to whom the owner did not intend and had not contracted to sell it, and to whom he did not deliver it for the purpose of passing to him the title ? Again, .suppose A. should verbally agree to sell to B. a certain picture at a price exceeding fifty dollars, which B. verbally agreed to buy, tne price to be paid before a certain day, and the picture to be delivered on payment of the price ; and C., without the authority or knowledge •of B., should, before the appointed day, go to A. representing that he came on behalf of B., and as his ;agent, for the picture, and should pay to A. the contract price and take away the picture, could not B. remover the picture ?
If, in the case before us, the defendant had made, in 'his own name and on his own behalf, a new contract with Patchin, and Patchin, intending to disregard his previous contract, had made sale of the stock to the defendant, the title of the plaintiff to any relief would be ■doubtful. It is contended on the part of the defendant, that such was, in fact, the case ; that Patchin delivered the stock to him, upon the express condition that the plaintiff should not have any of it.
This position rests for support upon the testimony of the defendant, and is in opposition to the finding of the court.
There is such a contrariety between the testimony of •the defendant and that of several of the witnesses called by the plaintiif, that under the findings of the court and *371 jury, the defendant must "be considered as a discredited witness.
We, therefore, upon this review, cannot disturb the finding.
The cáse must be disposed of upon the established theory that the exchange was made between Patchin of the one part, and the plaintiff and defendant of the other part, under the contract of exchange, made between them, and that, in making the exchange, the defendant ostensibly and in fact acted on behalf of himself and the plaintiff.
The statute of frauds has no application to such a case.
It was truly said by the counsel of the defendant that there is a variance between the complaint and the proofs, in this, that the complaint alleges that the plaintiff and defendant were to deliver to Patchin fifteen of said bonds of one thousand dollars each, when the proofs show that certain interest coupons attached to them were to be cut off before delivery. It does not appear that any such objection was taken on the trial, and besides, it is not, under the Code, a material variance (Code, §§ 169, 170, 171).
The counsel of the defendant called our attention to an offer made by him on the trial, before the jury, to put in evidence the proceedings of the board of directors of the Buffalo, Few York & Erie Railroad "Company, which was rejected, and to the rejection of which he excepted. The proceedings of the board, offered to be shown, are not stated in the case. They may in no degree tend to prove that for which they were offered, and upon this ground may have been excluded. The ruling must be presumed to be correct, and there is nothing in the case showing that it was erroneous
Upon the trial by the court the defendant offered to prove “that the stock of said railroad company had appreciated and become greatly enhanced in intrinsic value between the time of the alleged purchase and the time of the demand and tender in July, 1862, and that *372 the plaintiff knew it; that said company, at the time of said alleged purchase, was insolvent, and so continued until just before said demand ; that the value of the stock between the time of the alleged purchase and the commencement of this suit, had been raised to par principally through the personal exertions of the defendant, and that the defendant, in the prosecution of the enterprise by which the value of the stock was so enhanced, and in order to promote it, conveyed away sixty thousand dollars of his own stock.”
The demand and tender referred to were made on July 8, 1862. This action was commenced May 15, 1863.
The facts offered to be proved were only material, first, as bearing upon the questions of fact which had been tried and passed upon by the jury; second, as tending to show that the plaintiff was barred of relief by laches in asserting his rights, and by acquiescence in the adverse claim of the defendant.
I. There was no error in rejecting the evidence as bearing. upon the questions of fact which had been passed on by the jury. Those questions had been fully investigated before the jury, and the court, by refusing to grant a new trial, had in effect declared itself satisfied with the findings of the jury. The defendant was not entitled, as a matter of right, to a new trial of them by court or jury,
II. I think there was no error in rejecting the evidence as tending to show that the plaintiff was guilty of such laches in the prosecution of his rights, and of an acquiescence in the adverse claim of the defendant, as to render the prosecution of his action inequitable and unconscionable, that is, as tending to establish a defense in equity to the otherwise resulting liability. Our statute prescribes the time in which equitable actions as well as legal actions may be brought. The plaintiff’s action was not, by the statute, barred by mere lapse of time; and there is nothing upon the face of the complaint showing that the plaintiff’s title to relief is barred *373 in equity by lapse of time or by any other matter. I have no doubt but that a claim may be barred in equity within the period of time fixed by the statute of limitations. If the matters constituting, upon the principles of equity, such a defense, appear upon the face of the complaint, the defense possibly may be presented by demurrer, or be taken advantage of on the trial (Deloraine v. Brown, 3 Brown Ch., 645, Perkins’ Ed., Notes ; Code, §§ 74, 149).
But if none of tae facts necessary to the defense appear, or if all the facts do not appear on the face of the complaint, and it is necessary to superadd facts to make out the defense, the defense must be set up in the answer. The Code requires it, and such was the rule of pleading before the Code. The answer does not. set up the defense. It is therefore waived, and the decision of the case made to turn on the truth of the plaintiff’s allegations.
But if the facts offered to be proved had been set up in the answer, and were in the case, as conceded facts,
I do not think, upon the whole case, a defense to the otherwise established liability of the defendant would be made out.
The action is an equitable one, but it is to enforce a legal right, as has already been shown. It is not for the specific performance of a contract upon which, by some slip or delay, all remedy has been lost at law, and by which an appeal is taken from the conscience of him with whom the contract was made, to that of the court, and is not governed by the principles peculiar to that action. It is a case of mala fide possessio. The stock belongs to the plaintiff; it came to the possession of the defendant in confidence, and is held by him in hostility „ to the plaintiff’s rights, and in bad faith, and against conscience. Equity neither glides over nor screens such conduct, with slight neglect or delay on the part of the aggrieved party.
The principles by which courts of equity, prior to any statute prescribing the time in which actions must *374 be brought in them, adjudged the defense under consideration, are concisely and happily stated by Lord Camden" in Smith v. Clay, the best report of which is to be found in Deloraine ». Brown (supra). He said, “A court of equity, which is never active in relief against conscience or public convenience, has always refused i s aid to stale demands, where the party slept upon his right and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience and good faith and reasonable diligence ; when these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore from the beginning of this jurisdiction there was always a limitation to suits in this court. Expedit reipublicce ut sit finis litium is a maxim that has prevailed in this court in all times without the help of an act of parliament. But as the court has no legislative authority, it could not properly define the time of bar by a positive rule, to an hour, a minute or a year; it was governed by circumstances. But as often as parliament has limited the time of actions and remedies to a certain period in legal proceedings, the court of chancery adopted that rule and applied it to similar cases in equity.”
The plaintiff and defendant were directors of the railroad company, and agreed in the management of its affairs until down to July, 1862, and they had no conversation in regard to said stock, after Patchin transferred it, until that time, when a disagreement as to the management of the road sprung up between them, and the plaintiff demanded of the defendant the stock. During that time it would seem not to have been regarded as a matter of any great importance whether the plaintiff’s stock was in his own or the defendant’s possession, or whether the bonds, to which the defendant was entitled, were in the plaintiff’s or defendant’s possession.
In less than eleven months after this disagreement sprung up between the plaintiff and defendant this ac *375 tion was commenced. The controversy is not embarrassed by claims or intervening equities of third persons.
Giving the defendant, therefore, the benefit of the facts he offered to prove, I ám of the opinion that he could not avoid the otherwise established title of the plaintiff to relief.
The tender made bjr the plaintiff, at the time he demanded, on July 8, 1862, the stock of the defendant, was not good, as a strict tender, because the interest coupons of December, 1861, and. of June, 1862, had been cut off the bonds and were not tendered. It was not necessary to make a formal tender of the bonds to maintain the action ; the offer in the complaint is sufficient for that purpose. The omission to make a tender could only affect the question of costs. It is plain that a strict tender would have been unavailing.
The defendant, in his answer, “admits that the plaintiff is willing to give five bonds of said company of one thousand dollars each, for said stock, which, and the offer of said plaintiff in that behalf, this defendant lespectfully declines.”
I think the judgment should be affirmed.
Clinton and Veep lank, JJ., concurred.
Judgment affirmed.*

 We are informed that the judgment was affirmed in the court of appeals, in December, 1869.